IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATALIA CHAROFF<br>    *Plaintiff*, | : |
| v. | : |
| MARMAXX OPERATING CORP.<br>d/b/a TJ MAXX; TJX COMPANIES, INC.<br>d/b/a TJ MAXX; and, TJ MAXX<br>DEPARTMENT STORE<br>    *Defendants*. | CIVIL ACTION<br>NO. 18-4712<br>:<br><br>: |

### **MEMORANDUM**

Jones, II J.                                                                                                                                                April 7, 2020

### **I.**     **INTRODUCTION**

      Plaintiff Natalia Charoff commenced the above-captioned matter against Defendants MarMaxx Operating Corporation d/b/a/ TJ Maxx, TJX Companies Inc. d/b/a TJ Maxx, and TJ Maxx Department Store, alleging she sustained injuries after a liquid substance inside the Langhorne, Pennsylvania TJ Maxx store caused her to slip and fall. Currently before the court is Defendants' Motion for Summary Judgment.  For the reasons set forth herein, said Motion shall be denied.

### **II.**     **BACKGROUND**

      **a.**  **Procedural History**

      Plaintiff commenced this litigation by filing a Writ of Summons in the Philadelphia Court of Common Pleas on October 14, 2018. (ECF No. 1, Ex. A.) On October 24, 2018, Plaintiff filed a Complaint and shortly thereafter, Defendants removed the matter to federal court on the

basis of diversity. (ECF No. 1.) Defendants then filed an Answer and the matter was referred to an arbitration panel. (ECF Nos. 3, 9.) A hearing was held in July 2019, at which time Plaintiff was awarded damages. (ECF No. 15.) Defendants appealed the arbitrator's decision and requested a trial *de novo*. (ECF No. 16.) However, shortly thereafter, Defendants moved for summary judgment. (ECF No. 18.) Plaintiff filed a Response thereto (ECF Nos. 21, 22), and Defendants filed a Reply. (ECF No. 23.)[1] The matter is now ripe for disposition.

   b.   **Undisputed Facts**

The undisputed facts[2] establish that on September 9, 2016, Plaintiff slipped and fell at a TJ Maxx store located at 2424 East Lincoln Highway in Langhorne, Pennsylvania. (SUF ¶ 2; RSUF ¶ 2.) When Plaintiff first entered TJ Maxx, she went to the back of the store to get a box of cookies. (SUF ¶ 9; RSUF ¶9; Pl.'s Dep. 17:18-18:1, April 23, 2019.) Plaintiff then walked to the front of the store to purchase the cookies, but discovered they were not marked with a price. (SUF ¶ 10; RSUF ¶ 10; Pl.'s Dep. 18:1-5, 10-17.) She returned to the rear of the store and retrieved another box before heading back up to the front once again. (SUF ¶¶ 11-12; RSUF ¶¶

---

[1] In addition to their original submissions, both parties filed multiple supplements, as well as responses thereto. Namely, Plaintiff first filed a Surreply to Defendants' Reply, which included the report of professional engineer. (ECF No. 24.) Defendants then filed a Response to said report. (ECF No. 26.) Defendants also filed a Supplemental Brief in support of their Motion, which discussed a recent Third Circuit opinion regarding the issue of spoliation. (ECF No. 27.) Plaintiff filed a response (ECF No. 28), as well as a brief relying on supplemental authority from the Superior Court of Pennsylvania. (ECF No. 29.) Defendants then filed a Response, distinguishing that case. (ECF No. 30.) Neither party ever sought leave to file any of the last five submissions of record (ECF Nos. 26-30), as is required by this Court's Policies and Procedures. *See U.S. District Judge C. Darnell Jones, II's Policies and Procedures* (Rev. Dec. 2, 2016), Civ. Cases, § A(5) ("A party may move to file a reply or sur-reply brief. A motion for leave to file such must be accompanied by (1) a short memorandum indicating why the party wishes to supply the court with additional information, and (2) the proposed reply or sur-reply brief itself."). However, in the interest of time and efficacy, the court shall consider these filings for purposes of the instant ruling.

[2] For purposes of this discussion, the Court shall refer to Defendants' Statement of Undisputed Facts as "SUF" and Plaintiff's Response thereto as "RSUF."

11-12; Pl.'s Dep. 18:5-7.) As she approached the check-out area— approximately twelve (12) feet from where the cashiers were located—Plaintiff slipped and fell. (SUF ¶ 12-14; RSUF ¶ 12-14; Pl.'s Dep. 18:8-9, 22:6-14, 27:13-28:1.)

During her deposition, Plaintiff testified that she did not see anything on the floor prior to her fall, but that after she slipped, she noticed dirty wet spots. (SUF ¶ 15; RSUF ¶ 15; Pl.'s Dep. 31:21-24, 32:7-8.) Plaintiff further stated that she touched the wet spots and they felt slimy and very sticky, and appeared transparent but dirty. (SUF ¶ 15; RSUF ¶ 15; Pl.'s Dep. 32:2-6.) Plaintiff described the spilled liquid as being about one (1) foot wide, and said she did not know how it got there or how long it had been there. (SUF ¶ 15; RSUF ¶ 15; Pl.'s Dep. 32:9-23.) Plaintiff testified that she saw a "cleaning lady" somewhere near the front of the store who was using a mop; Plaintiff assumed the employee was using the mop to clean, but she did not know for certain. (SUF ¶ 15; RSUF ¶ 15; Pl.'s Dep. 33:3-15.) Plaintiff also stated she did not observe any customers spilling liquids in the area where she fell. (SUF ¶ 15; RSUF ¶ 15; Pl.'s Dep. 33:22-24, 34:1.)

After Plaintiff fell, a cashier notified the store's manager, Joeval Warner, of the incident. (SUF ¶ 24; RSUF ¶ 24; ECF No. 21-4, Warner Dep. 10:15-20, Mar. 17, 2019.) Warner spoke with Plaintiff, and she showed him where she had fallen. (SUF ¶ 16, 25; RSUF ¶ 16, 25; Pl.'s Dep. 36:4-10, 37:15-22; Warner Dep. 10:24, 11:1-4.) Warner observed small drops of liquid on the floor. (SUF ¶ 26; RSUF ¶ 26; Warner Dep. 16:18-24, 17:1-3.) Warner believed the spilled liquid covered an area of approximately one (1) foot. (SUF ¶ 28; RSUF ¶ 28; Warner Dep. 38:1-13.) Warner did not believe anyone witnessed Plaintiff fall. (SUF ¶ 29; RSUF ¶ 29; Warner Dep. 36:7-11.) Warner took Plaintiff's contact information and told her someone would be in touch regarding the incident. (SUF ¶ 17; RSUF ¶ 17; Pl.'s Dep. 37:23-24, 38:3.) Neither Warner nor

any other store employee told Plaintiff they knew about the spill prior to her fall. (SUF ¶ 18; RSUF ¶ 18; Pl.'s Dep. 67:23-24, 68:1-3.)

Plaintiff testified that she slipped around 5:45 p.m. and had been in the store approximately 15 minutes before the incident occurred. (SUF ¶¶ 7-8; RSUF ¶¶ 7- 8; Pl.'s Dep.17:3-8.) Plaintiff left the store about 10 minutes after she fell. (SUF ¶ 21; RSUF ¶ 21; Pl.'s Dep. 39:11-13.)

b. **Disputed Facts**[3]

Plaintiff disputes Defendants' contention that Warner "believed" the spilled liquid was clear. (SUF ¶ 27; RSUF ¶ 27.) Defendants dispute Plaintiff's assertion that there was a store employee who witnessed her fall. Defendants also dispute Plaintiff's claim that they did not have a policy or procedure in place to monitor for and address spills as they occurred. Finally, Defendants dispute Plaintiff's assertion that they have destroyed or hidden relevant evidence.

A party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record, which may include depositions. *See* Fed. R. Civ. P. 56(c)(1)(A). However, when the non-movant provides rebuttal evidence, conclusory, self-serving testimony "is insufficient to withstand a motion for summary judgment." *See Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002)) (internal quotation marks omitted); *see also Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011) (holding that "self-serving deposition testimony

---

[3] Plaintiff raised three new issues in her Response Brief, which Defendants subsequently disputed in their Reply. Because these issues turn on facts not dealt with in either party's Statement of Facts (either disputed or undisputed), this Court shall treat them as disputed facts and address each in turn. The court again notes the parties' continuing failure to abide by applicable Policies and Procedures; namely, those pertaining to motions for summary judgment. *U.S. District Judge C. Darnell Jones, II's Policies and Procedures* (Rev. Dec. 2, 2016), Civ. Cases, § D (2) (delineating procedures for raising and addressing disputed and undisputed facts on summary judgment).

4

is insufficient to raise a genuine issue of material fact" when other evidence of record rebuts the testimony).

### i. Liquid on Floor

Plaintiff disputes Defendants' contention that Warner "believed" the spilled liquid was clear. (SUF ¶ 27; RSUF ¶ 27.) Plaintiff maintains that Warner's testimony was "yeah, I mean I believe [it was clear], but I can't tell you exactly." (Warner Dep. 38:21-22.) This Court finds said statement to be a distinction without a difference. Thus, this dispute does not constitute a genuine issue of material fact.

### ii. Whether an Employee Witnessed Plaintiff's Fall

Plaintiff maintains that there was a TJ Maxx employee who was right next to her when she fell, and that said employee witnessed the incident. (Pl.'s Resp. Br. 5; Pl.'s Dep. 29:19-24.) In response, Defendants argue that beyond Plaintiff's own self-serving testimony, "there is no evidence confirming the existence of this person at the scene of the incident or that the person was, in fact, a store employee[.]" (Defs.' Surreply 1.) Defendants further argue that there is "no evidence that this 'John Doe' created the condition, had notice of the condition or that he was present for any length of time before [Plaintiff's] fall." (Defs.' Reply 2.) While Defendants are correct that Plaintiff offers nothing more than her own self-serving testimony to support this fact, "self-serving testimony *may* be utilized by a party at summary judgment." *Waldron v. SL Indus.*, 56 F.3d 491, 501 (3d Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Because Defendants point to no evidence of record that *disputes* Plaintiff's assertion that an employee witnessed her fall, and Warner, the store manager, testified that there were likely

between four (4) and eight (8) employees working at the time (Warner Dep. 47:7-8), this constitutes a genuine issue of material fact to be resolved at trial.[4]

### iii. Defendants' Policy and Practice for Monitoring and Cleaning Spills

The next disputed fact pertains to Plaintiff's assertion that Defendants "had no protocol or staff for inspecting, monitoring, or cleaning the floor of the store after a maintenance service cleaned every morning at 7:00 a.m." (Pl.'s Resp. Br. 3) (citing Warner Dep. 35:3-6). In response, Defendants cite to Warner's testimony for the proposition that there was no *specific* employee tasked with monitoring the floor for spills; instead, it was "everyone's responsibility" to monitor the floor and help clean up spills. (Defs.' Reply 2) (citing Warner Dep. 35:3-22.) The record makes clear that Plaintiff has misrepresented Warner's testimony. Warner testified that the store's procedure for spills "would've been if I saw a spill on the floor, I would've communicated over the walkies to another team member that we had a spill in whichever specific area, get me supplies, and I would stay with the area, until the person came over with the supplies." (Warner Dep. 35:12-17.) This Court therefore finds this fact to be undisputed by the record.

### iv. Evidence Spoliation

Plaintiff further contends Defendants destroyed relevant evidence she requested, therefore, summary judgment is precluded. In particular, Plaintiff—via a letter to Defendants' insurer, Zurich Insurance Company—requested preservation of *any* video recording taken on the

---

[4] This Court further notes that Warner's accident report—the only contemporaneous documentation of record—***does not say*** that there were no witnesses to the fall; instead, it says the witnesses' names and addresses are "unknown." (Warner Dep. Ex. F, ECF No. 18-4 at 63.) The manner in which Warner worded this information in the report raises a reasonable inference that on the day of Plaintiff's fall, Warner believed someone had witnessed the incident. During his deposition, Warner testified that he did not recall whether there were any witnesses. (Warner Dep. 36:9.)

day of her fall. (Pl.'s Resp. Br. Ex. G, ECF No. 21-8.) Plaintiff sent the letter six (6) days after her fall, on September 15, 2016. (Pl.'s Resp. Br. Ex. G, ECF No. 21-8.) Because Keith Martin, Defendants' District Loss Prevention Manager, testified that in 2016, videos were kept from between eight (8) to thirty (30) days,[5] Plaintiff maintains that "the failure to produce any video can only lead to the belief, without any other explanation, that the tapes were destroyed in anticipation of litigation." (Pl.'s Resp. Br. 8.)

In response, Defendants argue "there was no video surveillance of the location of [the] incident" and that Plaintiff's letter did not state that Defendants should "keep all video surveillance footage for the entire store." (Defs.' Reply 4) (citing Pl.'s Resp. Br., Ex. H). Defendants also argue that the video evidence is not relevant to Plaintiff's claim, as whatever video evidence did exist was of "other areas of the store, not in question in this case[.]" (Defs.' Reply 5.) Defendants provide further support for their argument through means of yet another Supplemental Brief, in which they discuss the Third Circuit's recent decision in *Pace v. Wal-Mart Stores E., LP*. In *Pace*, the court held that when there was testimony that a slip and fall accident occurred in a "blind spot" for surveillance cameras, and the plaintiff could not "show that [the] alleged video evidence even existed in the first place," no adverse inference could be drawn from the defendant's failure to produce said video. (Defs.' Second Supp. Br. 2) (citing *Pace*, No. 18-3313, 2020 U.S. App. Lexis 2796, at *3, 7 (3d Cir. Feb. 25, 2020).

However, Plaintiff maintains Defendants have failed to address the issue of actual notice, and thus the facts of her case as distinguishable from those in *Pace*. Plaintiff further contends Defendants erred by focusing only on her failure to provide evidence that "video footage [of the fall] was captured[,]" and notes that Defendants have not addressed whether other relevant video

---

[5] Martin Dep. 28:7-9, June 26, 2019.

footage exists, or provided an explanation for their failure to produce said footage. (Pl.'s Second Surreply Br. 1-2, ECF No. 29 at 1-2.)[6] Relying on the Pennsylvania Superior Court matter of *Marshall v. Brown's 1A, LLC*, Plaintiff argues that when a defendant provides no explanation for its failure to produce a video, spoliation is an issue best left to the jury. (Pl.'s Second Surreply Br. 2, ECF No. 29 at 2 (citing 213 A.3d 263, 269 (Pa. Super. Ct. 2019)).[7]

"When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) (citations omitted). This rule applies only if the evidence in question is relevant, within the party's control, and the party appears to have *actually* suppressed or withheld it. *Id.* Courts will not make an unfavorable inference if the evidence "has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Id.* (citation omitted). Evidence is considered relevant if "it has *any* tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b) (emphasis added).

---

[6] Plaintiff titles this particular document "Additional Sur-Reply." Although it is indeed an "additional" surreply, the number of replies and surreplies filed in this matter render that title unhelpful. Accordingly, this Court shall refer to said document as "Plaintiff's Second Surreply." The court further notes that *neither* side has included page numbers in any of their multiple submissions. As such, this Court shall provide parallel citations to the corresponding ECF document when necessary, for the sake of clarity.

[7] Citing to the court's holding in *Pace*, Defendants argue that because *Marshall* is a state court matter, it is not controlling here with regard to spoliation. (Defs.' Third Supp. Br. 1-2.) The court in *Pace* did state that "whether a litigant is entitled to an adverse inference based on spoliation is a procedural question governed by federal law in diversity cases, so Pennsylvania state court decisions on the issue are merely persuasive." *Pace*, 2020 U.S. App. Lexis 2796, at *7 n.1. However, *Pace*—a non-precedential, unpublished opinion—is likewise not binding upon this Court.

In this case, Warner testified that the general procedure after a slip and fall is to "call it in" to the insurer, Zurich American Insurance. (Warner Dep. 20:6-11.) Martin testified that if Zurich requested video surveillance after an accident had occurred, "we would try to provide that for them." (Martin Dep. 18:1-4.) Martin further testified that in September 2016, there were approximately 16 cameras in the store and that requests to preserve video would typically come from Zurich, and video would be mailed directly to them if there was any relevant video. (Martin Dep. 23:9-11, 23-25.) Additionally, Martin stated that if Zurich had requested video in response to Plaintiff's preservation letter, he would have likely received an email from Zurich in which the request was made, but because he no longer had access to his emails from the time in question, he could not say whether Zurich sought the video. (Martin Dep. 30:4-9.) Martin testified that while he did not recall what happened regarding Plaintiff's slip and fall, as a general matter, if there was video of the incident, the store would try to get it, and if there was no video, it would inform Zurich of this fact via email. (Martin Dep. 31:21-32:15.) Again, because he no longer had access to emails from the time of the incident, Martin could not say whether he had provided Zurich with a copy of the video, or whether he had told them he could not locate any footage. (Martin Dep. 32:13-15.)

This Court draws an adverse inference from Defendants' failure to produce surveillance videos, and infers that Defendants failed to do so "out of the well-founded fear that the contents would harm [them]." *Brewer*, 72 F.3d at 334. Defendants point to no evidence that suggests Zurich failed to contact them to obtain the videos. Based on Martin's testimony, it would have been standard protocol for Zurich to reach out to him after it received a preservation letter. (Martin Dep. 30:4-9.)

This Court finds unavailing Defendants' argument that Plaintiff only sought video of the precise spot where she fell; Defendants base their position on semantics. Plaintiff's interrogatories sought video from "the location where the alleged accident occurred[,]" which could easily be read to refer to the store itself. (Pl.'s Interrog. ¶ 12, ECF 21-9.) Assuming *arguendo* that Defendants' reading of the interrogatory is accurate and it refers *only* to the precise location of the accident, Plaintiff's preservation letter was explicitly broad in scope, and it should have caused Defendants to preserve video of other parts of the store. Specifically, the letter sought video "of the location where this trip and fall occurred, *and the surrounding areas in [sic] the location (from all camera angles) even if you do not capture the actual fall*[.]" (Pl.'s Resp. Br. Ex. G, ECF No. 21-8) (emphasis added).

This distinguishes Plaintiff's case from *Pace*. The plaintiff in *Pace* had only requested "surveillance video footage of the area where [he] fell." *Pace*, 2020 U.S. App. Lexis 2796 at *2. Similarly, Mr. Pace did "not argue that Wal-Mart had actual notice of the liquid that caused him to slip and fall. Instead, [he] relie[d] on establishing constructive notice." *Id.* at *5-6. Plaintiff herein *is* arguing that Defendants had actual notice, and video evidence might speak to this issue.

It was clear that Plaintiff's letter in this case was seeking preservation of footage beyond that of the exact location where she fell; it sought *all* videos from the time of the accident. These videos *may* have been relevant to Plaintiff's claim. *See* Fed. R. Evid. 401(a)-(b) (noting that relevant evidence is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."). It is possible that the surveillance cameras captured employees' actions in other areas of the store that might indicate whether they had previous knowledge of the spill. Plaintiff's actual notice claim hinges on there being an employee in the area that witnessed her fall; video footage might have

10

captured this employee. Accordingly, for purposes of the instant motion, this Court draws an adverse inference from Defendants' failure to preserve the video footage.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56(a). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted). Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) (quoting *Celotex*, 477 U.S. at 325). "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted). Accordingly,

summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A court must "view the facts and any reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003).

## III. DISCUSSION

Defendants argue they are entitled to judgment as a matter of law because Plaintiff cannot offer any evidence to show Defendants had actual or constructive notice of the hazardous condition. (Defs.' Br. 10.) Plaintiff maintains Defendants had actual notice of the spilled liquid, as a store employee was "right next to [her]" when she fell. (Pl.'s Resp. Br. 6) (citing Pl.'s Dep. 29:19-30:2.) In the alternative, Plaintiff argues Defendants had constructive notice of the liquid. (Pl.'s Resp. Br. 7.)

Under Pennsylvania law, a plaintiff alleging negligence must establish that: (1) the defendant owed her a duty of care; (2) the defendant breached that duty; (3) there was a causal connection between the conduct and the plaintiff's resulting injury; and (4) she suffered actual loss or damage as a result of the defendant's breach. *R.W.*, 888 A.2d at 746. The duty owed by a business owner "'depends upon whether the person entering [the business] is a trespasser, licensee, or invitee.'" *McDowell v. Moran Foods, LLC*, 680 F. App'x 72, 74 (3d Cir. 2017) (quoting *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983)). A store customer is considered an invitee. *Id.*; *see also Nelson v. Dollar Tree, Inc.,* CIVIL ACTION NO. 18-2242, 2019 U.S. Dist. LEXIS 44248, at *8 (E.D. Pa. March 18, 2019) ("A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.") (internal quotation marks and citation omitted). "As compared to

other categories, a landowner owes the highest duty of care to a business invitee. Under this duty, a landowner must protect a business invitee not only from 'known dangers,' but also 'from dangers that might be discoverable with reasonable care.'" *Nelson*, 2019 U.S. Dist. LEXIS 44248, at *8-9. To that end, the possessor of land may be deemed liable if s/he . . .

    (a)    knows, or by the exercise of reasonable care, would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

    (b)    should expect that such invitees will not discover or realize the danger, or will fail to protect themselves against it, and

    (c)    fails to exercise reasonable care to protect such invitees against the danger.

*White v. Atkore Corp.*, CIVIL ACTION NO. 16-1422, 2018 U.S. Dist. LEXIS 94200, at *7 (E.D. Pa. June 4, 2018) (citing Restatement (Second) of Torts § 343 (1965)).

    The fact that an accident occurred does not—in and of itself—prove that a defendant breached the duty of care, nor does it establish or prove negligence. *Sheil v. Regal Ent. Group*, 563 F. App'x. 216, 218 (3d Cir. 2014) (citing *Estate of Swift by Swift v. Northeastern Hosp.*, 690 A.2d 719, 722 (Pa. Super. Ct. 1997)). Rather, to establish that a breach occurred, a plaintiff must present evidence which shows either that "the [defendants] had a hand in creating the harmful condition, or [that they] had actual or constructive notice of such condition." *Id.* (quoting § 343 of the Restatement (Second) of Torts). A plaintiff can establish actual notice by showing that the business knew of the condition, or that it was one which the business knew frequently occurred. *Id.* (citing *Moultrey v. Great A & P Tea Co.*, 422 A.2d 593, 596 (Pa. Super. Ct. 1980)). In contrast, "[t]o establish constructive notice, a plaintiff must demonstrate that 'the condition existed for such a length of time that in the exercise of reasonable care the [business] should have known of it.'" *Id.* (quoting *Moultrey*, 422 A.2d at 596).

    This Court shall address each type of notice in turn.

### A. Actual Notice

Plaintiff presents no argument that the spilled liquid is traceable to Defendants or their agents. Rather, she argues Defendants were negligent because they failed to attempt "to discover any adverse floor condition." (Pl.'s Resp. Br. 7.) Plaintiff contends there was a salesperson present when she fell, and maintains that Defendants therefore had actual notice of the spilled liquid. (Pl.'s Resp. Br. 5) (citing Pl.'s Dep. 29:19-30:2). In response, Defendants state "[t]here is no evidence confirming the existence of this person at the scene of [the] incident or that the person was, in fact, a store employee, other than [P]laintiff's self-serving testimony." (Defs.' Reply 1.)

However, the Third Circuit has held that "self-serving testimony may be utilized by a party at summary judgment." *Waldron*, 56 F.3d at 501 (*citing Celotex Corp.*, 477 U.S. at 324) (noting that when "testimony was under oath and subject to cross examination, [and] no other evidence was presented" to rebut it, there is a "disputed material fact issue to be resolved at trial."). As previously explained, this Court finds there is a genuine issue of material fact regarding whether one of Defendants' employees witnessed Plaintiff's fall. This, coupled with the fact that there is reason to believe Defendants failed to produce surveillance videos "out of the well-founded fear that the contents would harm [them,]" precludes summary judgment as to this issue. *Brewer*, 72 F.3d at 334.

### B. Constructive Notice

Defendants next argue that Plaintiff cannot establish that they had constructive notice of the spilled liquid because "Plaintiff does not know what the liquid was, the source of the liquid or how long it was present." (Defs.' Br. 12.) In response, Plaintiff argues that "[i]t has been confirmed that there was no attempt by [Defendants] to discover any adverse floor condition, and

14

there has been no explanation as to the inability to produce video footage of the store on the date of the incident." (Pl.'s Resp. Br. 7.)

"Constructive notice requires proof that the condition had been present long enough that, in the exercise of reasonable care, the defendant[s] should have known [about] its presence." *Thomas v. Family Dollar Stores of Pa., LLC*, No. 17-4989, 2018 U.S. Dist. LEXIS 196569, at *10 (E.D. Pa. Nov. 19, 2018) (citations omitted).

> To determine whether [a defendant] had constructive notice of the harmful condition, Pennsylvania courts consider the following factors: (i) time elapsing between the origin of the defect and the accident; (ii) the size and physical condition of the premises; (iii) the nature of the business conducted thereon; (iv) the number of persons using the premises and the frequency of such use; (v) the nature of the defect and its location on the premises; (vi) its probable cause; and (vii) the opportunity which defendant, as a reasonably prudent person, had to remedy it.

*Ames v. Columbia Props. Phila., LLC*, No. 14-1253, 2015 U.S. Dist. LEXIS 55860, at *13-14 (E.D. Pa. Apr. 25, 2018) (citing *Lanni v. Pa. R.R. Co.*, 88 A.2d 887, 889 (Pa. 1952)).

Just as with this Court's finding regarding the issue of actual notice, this issue again turns on spoliation. Taking into account the spoliation inference Defendants triggered through their failure to produce video evidence, this Court infers that the surveillance footage is adverse to Defendants. Even though the parties agree that the precise location of the spill was not captured on video, the requested footage of the *surrounding area* might have shown employees passing near the area of the spill, or it may have shown the spill's immediate aftermath (*e.g.* someone holding a leaking container or walking into frame covered in liquid from the spill). This footage may have helped Plaintiff to establish whether Defendants had constructive notice. As previously noted, Plaintiff's request for video of the area *surrounding* the location of her fall distinguishes this case from *Pace*.

Thus, this Court finds that there is a genuine issue of material fact regarding whether

Defendants had sufficient time to discover the spilled liquid. Summary judgment is therefore precluded. *See Baynes v. Home Depot U.S.A., Inc.*, No. 09-3686, 2011 U.S. Dist. LEXIS 62685, at *15 (E.D. Pa. 2011) (taking into account a spoliation inference and holding that a defendant was liable for negligence in a slip and fall because "Home Depot's failure to retain all but twenty minutes of surveillance tape from the date of Baynes's [sic] fall greatly prejudices her case. It is all but impossible to establish the length of time the substance was on the floor without this evidence, which is an essential element of Baynes's [sic] case.").

**IV.　CONCLUSION**

For the reasons set forth hereinabove, Defendants' Motion for Summary Judgment shall be denied.

An appropriate Order follows.

　　　　　　　　　　　　　　　　　　　　　　　　BY THE COURT:


　　　　　　　　　　　　　　　　　　　　　　　　/s/  C. Darnell Jones, II    J.